**SO ORDERED: April 22, 2009.**



**Anthony J. Metz III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:                                  )
                                        )
JOHN JACOB BRADLEY GRIMES      )      CASE NO. 08-12808-AJM-7A
                                        )
      Debtor                            )

**ORDER ON TRUSTEE'S MOTION**
**FOR TURNOVER OF WAGES EARNED BUT NOT PAID**
**AS OF PETITION DATE**

The Debtor filed this chapter 7 case on October 14, 2008.  Paul D. Gresk, the

chapter 7 trustee ("Trustee") moved for turnover of the wages the Debtor had earned

but had not been paid (the "Wages") as of the petition date. [1]  The Debtor amended his

Schedule C and claimed "unpaid wages" in an "unknown" amount entirely exempt and

_____

[1] This order is limited in discussion and decision to the turnover of the Wages.  To the extent the
Trustee's motion seeks turnover of assets other than Wages, those issues are not addressed in this
order.

1

objected to the Trustee's turnover motion. [2]

Bankruptcy Judge James K. Coachys of this District has held that the Indiana garnishment statute (Ind Code §24-4.5-5-105(2)) which subjects to garnishment only a portion of earned but unpaid wages applies equally in bankruptcy cases. Therefore, only a portion of the wages, as determined by the wage garnishment statute, is subject to turnover to the Trustee. *In re Haraughtly*, Case No. 08-5587-JKC-7A (April 1, 2009). This Court agrees with the result reached in *Haraughty*.

A few additional points warrant discussion. As the *amicus* brief filed in the *Haraughty* case noted, bankruptcy code section 544(a)(1) gives the Trustee the status of a judicial lien creditor upon the commencement of the bankruptcy case. *Amicus Curiae Brief in Response to Trustee's Motion for Turnover*, p. 9. This "hypothetical lien creditor" status gives the Trustee the powers that a judgment lien creditor would have against a debtor under state law absent the bankruptcy. If a judgment lien creditor is limited by the wage garnishment statute in the amount of wages he can garnish, §544

---

[2] The Debtor's amended objection to the Trustee's turnover motion urges that, because the Trustee did not object to his amended Schedule C, the 100% Wages exemption as claimed therein must be allowed. The Debtor did not mention the Wages, in either his initial Schedule B (personal property) or Schedule C (exemptions). The Debtor's amended Schedules B and C were filed only after and as a response to the filing of the Trustee's turnover motion. The Court is mindful that the 30 day period to object to exemptions claimed on Schedule C is strictly enforced. See *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644 (1992) (chapter 7 trustee must object to claim of exemptions within 30 days and exemption is allowed if no objection is filed within that period, even if objection has no colorable basis). The facts here are distinguishable from the facts in *Taylor*, as the debtor there initially claimed exempt the entire recovery from a pending discrimination action. It was not until the debtor realized a sizeable recovery from that action that the trustee formally moved for turnover of it. Here, it would serve no purpose to require the Trustee to perform the perfunctory task of filing a "formal" objection to the amended exemptions, since they were filed as a response to his turnover motion – seeking 100% of the Wages – in the first place. The Trustee's turnover motion here is sufficient to serve as an objection to the Debtor's amended Schedule C. *In re Tatum-Charlemagne*, 368 B.R. 654, 659 (Bankr. N. D. Ohio 2006) (where trustee failed to object to debtor's amended claim of exemptions which were filed after the trustee filed turnover motion, the court held that "although the Trustee's Motion is not formally styled as an objection to exemption, it comprises a sufficient basis for an objection and gives the Debtor and interested parties timely and sufficient notice for the purposes of Bankruptcy Rule 4003(b)").

dictates that a bankruptcy trustee with the same legal status be similarly limited in what he can recover.  Otherwise, a judgment debtor would stand to fare worse initially and lose more of the Wages once he filed bankruptcy than had he not filed, for the debtor not in bankruptcy is entitled to keep 75% of the Wages, whereas the debtor in bankruptcy is required to turn all of the Wages over to the trustee and keep none.  The *amicus* brief in *Haraughty* points out that debtors accrue living expenses for food, medicine, utilities and rent or a mortgage on an ongoing basis.  *Amicus brief*, p.  11-12.  The wage garnishment statute recognizes this fact and shelters all but a portion of the debtor's income stream from creditors to enable a debtor to meet these ongoing obligations.  The accrual of these ongoing living expenses do not cease upon the filing of a bankruptcy petition, and neither should the protection afforded to a debtor's wages.  Indeed, in his brief filed in the *Haraughty* case, the Trustee acknowledges that garnishment statutes "were enacted to impose limitations on the garnishment process, to brake overreaching by creditors, promote national uniformity in the garnishment area, and reduce the need for resort to bankruptcy by otherwise aggrieved debtors"... in short, "to head off bankruptcies in the first place".  *Brief in Support of Trustee's Amended Motion for Turnover* p. 11-12.   If keeping a debtor out of bankruptcy was the impetus behind limiting the amount of wages a creditor could garnish, it makes no sense that those limitations disappear once the debtor ultimately falls over the edge and resorts to bankruptcy.

    Furthermore, the Seventh Circuit Court of Appeals alluded that the Indiana wage garnishment statute applied in bankruptcy cases in *In re Oakley*, 344 F.3d 709, 713 (7th

3

Cir. 2003). In *Oakley*, the Court determined that cash on hand was an "intangible" asset and not "tangible" property, and thus the chapter 7 debtor could claim only the decidedly more "meager" exemption of $100. [3]  However, the Court noted that this "meager" exemption was tempered by Indiana's garnishment statute which allowed a "maximum of 25 percent of a debtor's income- of his *disposable* income, which is only a fraction of his total income".  344 F.3d at 713 (italics in original).  The court would not have balanced the limited amount available to be garnished with the meager intangible exemption also available to a chapter 7 debtor had it not, at least in dicta, presumed that the garnishment statute was applicable in bankruptcy cases.

Finally, this Court simply cannot agree that  Article I, §22 of the Indiana Constitution which guarantees the right of Indiana citizens to "enjoy the necessary comforts of life" by exempting "a reasonable amount of property from seizure or sale for the payment of any debt" is selectively applied, depending on whether the citizen is a debtor in or out of bankruptcy.  Every Indiana citizen enjoys the "constitutional right to have a reasonable amount of his or her property exempted from garnishment".  *Mims v. Commercial Credit Corp*., 307 N.E. 2d 867 (Ind. 1974).  A debtor's status as a debtor in bankruptcy does not extinguish that constitutional right.

Accordingly, the Debtor is required to turn over within thirty (30) days of the date of this order only the non-exempt balance of the Wages after his allowable exemption under the garnishment statute is calculated.

---

[3] The debtor in the *Oakley* case was entitled to exempt up to $100 in intangible property and up to $4000 in tangible property under Ind Code §34-55-10-2(b)(2, 3).  That statute has since been amended to allow maximum exemptions of $300 and $8000 for intangible and tangible property respectively.

4

# # #

Distribution:

John McManus, Attorney for the Debtor
Larry Des Jardines
Chapter 7 Trustee
United States Trustee